A. R. Means v. Commissioner.
Means v. Commissioner
Docket No. 63117.
United States Tax Court
T.C. Memo 1958-142; 1958 Tax Ct. Memo LEXIS 85; 17 T.C.M. (CCH) 722; T.C.M. (RIA) 58142; July 23, 1958
*85 The evidence offered by petitioner held insufficient to overcome the prima facie correctness of the deficiencies determined by the respondent. A. R. Means, Tidewater Trail Star Route, Fredericksburg, Va., pro se. Frank W. Hardy, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: The respondent determined deficiencies in income tax for the taxable years ended December 31, 1951 and 1952 in the amounts of $2,329.16 and $2,927.36, respectively. The amended petition assigns both directly and alternatively a large number of errors which may be summarized as follows: (a) The respondent erred in disallowing the deduction of a loss in the amount of $39,515.54 sustained in either the taxable year 1952, 1951 or 1950, resulting in a net operating loss for such year to *86 be used as a carry-over or carry-back as the case may be; (b) The respondent erred in failing to allow the deduction of a long-term capital loss as a business or non-business bad debt loss in the amount of $10,736.68 (or in the alternative $37,277.06) sustained in either the taxable year 1952 or 1951, resulting in a net operating loss carry-over or carry-back as the case may be; (c) The respondent erred in determining that $2,090.06 received by petitioner in 1950 from Means Construction Company was received as salary; (d) The respondent erred in determining that petitioner realized net rental income in 1951 in the amount of $2,965.04; (e) The respondent erred in disallowing the deduction of a loss in 1951 on the sale of a club membership; and (f) The respondent erred in finding and determining a deficiency in 1951 and 1952. Findings of Fact Petitioner is an individual and resides at Fredericksburg, Virginia. During the taxable years 1951 and 1952 the petitioner resided in Jacksonville, Florida, and filed joint income tax returns for those years with Blanche E. Means, who was the wife of the petitioner during those years but is no longer the wife of the petitioner by reason *87 of a divorce granted in early 1955. The returns for the periods here involved were on a cash and completed contract basis and were filed with the collector of internal revenue for the collection district of Florida. The notice of deficiency was mailed to the petitioner on March 22, 1956. For the year 1951, the respondent made adjustments to net income as follows: Net income as disclosed by return
$ 2,424.57
Unallowable deductions and
additional income: (a) Salary
$1,094.87
(b) Interest
174.25
(c) Rents
2,965.04
(d) Net operating loss
6,089.22
(e) Sale of capital assets
37.88
10,361.26
Total
$12,785.83
Additional deductions and
non-taxable income: (f) Standard deductions
$1,000.00
1,000.00
Net income adjusted
$11,785.83
For the year 1952, the respondent made adjustments to net income as follows: Net loss as disclosed by return
[21,212.36)
Unallowable deductions and addi-
tional income: (a) Bad debt
36,277.06
Total
$ 15,064.70
Additional deductions and
nontaxable income: (b) Capital asset sale
$ 625.52
(c) Standard deduction
1,000.00
1,625.52
Net income adjusted
$ 13,439.18
Adjustments *88 (a) and (b) were explained by respondent as follows: (a) The deduction claimed for alleged worthless bad debt of $36,277.06 of Means Construction Company has been disallowed because it has not been established that such debt became worthless during the year 1952 and because the basis of the debt has not been substantiated. (b) It has been determined that the loss allowable on dissolution of Means Construction Company is $2,251.03 and the loss deducted on Schedule D of your return for 1952 was $1,000.00. Decrease in capital gain is as follows: Net long term capital gain per re-
turn
$32,202.58
Loss allowable Means Con-
struction Company dis-
solution
$2,251.03
Loss reported on Schedule
D
1,000.00
Adjustment
1,251.03
Long term capital gain adjusted
$30,951.55
Taxable at 50% section 117
$15,475.77
Net capital gain reported
16,101.29
Adjustment-Decrease in capital gain.
$ 625.52
Petitioner, for ten or fifteen years prior to 1949, was engaged in the construction business in Jacksonville, Florida. In 1949, he owned two lots in a good location in Jacksonville. Later, he acquired two adjoining lots. In 1949, the Federal Government was *89 securing contractors to build Federal Housing Administration (hereafter referred to as F.H.A.) projects for war housing. Petitioner decided to try to build one of the so-called "608 F.H.A. projects" consisting of apartment buildings. In order to do this he was required to form a corporation and put up approximately $22,000. On February 10, 1949, River Road Apartments, Inc., was incorporated under the laws of the State of Florida. Its authorized capital stock consisted of 100 shares of preferred having a par value of $1 per share, and 100 shares of common of no par value. The common stock was issued as follows: A. R. Means
98 shares
Blanche Means
1 share
Mary G. Chancey
1 share
At the time of the hearing the common stock of River Road Apartments, Inc., was owned 60 shares by petitioner's divorced wife, 39 shares by petitioner, and 1 share by Mary G. Chancey. The 100 shares of preferred stock were issued to F.H.A., for which it paid $100. The certificate of incorporation provided among other things that in the event of any default by the corporation in the repayment of the 32-year loan to be made by the F.H.A., the holders of the preferred stock would be entitled *90 to remove all existing directors of the corporation and elect new directors in their stead. On October 22, 1949, a "Building Loan Agreement" was entered into between River Road Apartments, Inc., referred to in the agreement as the borrower and Commander Corporation, referred to therein as the lender. By this agreement the lender agreed to make a loan to the borrower in the principal sum of $207,200 at 4 per cent interest as a result of a commitment received by the lender from the Federal Housing Commissioner under section 608 of the National Housing Act. The borrower agreed to erect on land owned by the borrower within eight months from the date of the agreement a housing project to be known as River Road Apartments. On October 22, 1949, a construction contract was entered into between A. R. Means, doing business as Means Construction Company, referred to in the agreement as the contractor, and River Road Apartments, Inc., referred to therein as the owner. Under this agreement the contractor was to furnish all of the materials and perform all of the work in connection with the housing project and was to be paid therefor by the owner the sum of $197,986 in cash and in addition thereto *91 30 shares of the common stock of the owner. Petitioner encountered many difficulties in the construction of the apartments. One of the difficulties was that due to a misunderstanding of the architect's plans it became necessary to drive an additional 100 pilings. Another difficulty was due to an unforeseen condition of the earth under the lots that made it necessary to use 47-foot pilings instead of 32-foot as originally planned. Petitioner and his wife, on October 22, 1949, signed a Federal Housing Administration Indemnity Agreement in which they undertook and guaranteed that River Road Apartments, Inc., would fully and faithfully perform all the obligations in the agreement of the same date between it and Commander Corporation and to indemnify and save harmless the lender from costs and damages which it may suffer by reason of the failure of the borrower to so perform and to reimburse and repay to the lender any outlay and expense incurred in making good any such default on the part of the borrower up to the sum of approximately $19,799. At some time after October 22, 1949, petitioner incorporated the Means Construction Company. He put about $4,000 or $5,000 in the corporation *92 and became its sole stockholder. At some later date the contract between Means Construction Company (A. R. Means, owner) and River Road Apartments, Inc., was transferred to the Means Construction Company (a corporation). After the Means Construction Company was incorporated, petitioner completed as a sole proprietor a few Government jobs other than the job with River Road Apartments, Inc. He kept two sets of books, one for Means Construction Company (A. R. Means, owner) and one for Means Construction Company (a corporation). On December 10, 1952, the Means Construction Company (a corporation) was liquidated. Petitioner received all of its assets and assumed its liabilities. River Road Apartments, Inc., has operated at a loss ever since the apartments were completed. Opinion Petitioner offered no evidence relative to assignments of errors (c), (d) and (e) so we may regard those issues as abandoned. In any event, we have no jurisdiction as to the year 1950 since no deficiency was determined for that year. The evidence offered by petitioner relative to assignments of errors (a), (b) and (f) is insufficient to show error on the part of the respondent. Petitioner has failed to show *93 the total cost of the River Road Apartments and what part of such total cost was borne by him as a sole proprietor and what part was borne by the Means Construction Company (a corporation). In his amended petition he alleges as a fact that "The contract was completed in March 1952 and the actual cost of completing the contract was $237,501.54." No evidence was offered to prove this fact. Without such evidence and evidence of who bore the cost of completing the contract, we are unable to find there was a loss sustained of $39,515.54 ($237,501.54 minus $197,986) or of any other amount, or who sustained the loss if one was sustained. We do not reach the point argued by the respondent that in any event there could be no deductible loss under the holding of , affirmed (C.A. 4, 1956) , certiorari denied . See also V & . No proof has been offered as to the date the Means Construction Company was incorporated or when the construction contract between petitioner and River Road Apartments, Inc., was transferred to the Means Construction Company (a corporation). *94 Other than the $4,000 or $5,000 "put" in the Means Construction Company (a corporation) by petitioner at the time that company was incorporated we have no evidence of what other properties or money was placed in that corporation by petitioner or the value of the assets and liabilities of that corporation at the time it was liquidated on December 10, 1952. At the hearing petitioner testified that he thought he loaned this corporation "about $39,000" but we have no further proof that this was done. It may be noted that the respondent allowed a loss on the dissolution of the Means Construction Company (a corporation) of $2,251.03 in his adjustment (b) for 1952 set out in our findings. We have no evidence of how this loss was determined or whether any error was committed in the determination of the loss. Petitioner was not represented at the hearing by counsel other than himself. He had retained counsel for the purpose of filing the pleadings but did not retain them to proceed further and, on January 17, 1958, a motion by counsel requesting leave to withdraw as counsel for petitioner was granted. From the record that has been made, we are unable to find facts from which we can determine *95 whether the respondent committed any of the errors assigned by petitioner in his amended petition. The burden of proof was upon the petitioner to show that the respondent's determination was in error to the extent alleged. (Rule 32, Rules of Practice.) Petitioner has failed to meet that burden. After a very careful consideration of the entire record, we have no alternative but to sustain the respondent's determination. Decision will be entered for the respondent.